63 F.3d 287
 Darrell Wayland GILLIAM, Jr., James Matthew Swain, and
Pamela Owings, Petitioners-Appellees,
v.
James Lee FOSTER, Sheriff of Newberry County, Charles M.
Condon, Attorney General of South Carolina, and
James W. Johnson, Jr., Circuit Court
Judge of South Carolina,
Respondents-Appellants.
 No. 95-2434.
 United States Court of Appeals,
Fourth Circuit.
 Aug. 8, 1995.
 
 John Christopher Mills, Fairey, Parise & Mills, PA, Columbia, SC, for Darrell Wayland Gilliam, Jr.
 Samuel McGowan Price, Jr., Newberry, SC, for Pamela Owings.
 Joy Scherffius Goodwin, Levy & Goodwin, Columbia, SC, for James Matthew Swain.
 Donald John Zelenka, Chief Deputy Attorney General, Office of the Attorney General of South Carolina, Columbia, SC, for James Lee Foster, Charles M. Condon, and James W. Johnson, Jr.
 ORDER
 Respondents have appealed from an order of the district court granting Petitioners' request for a writ of habeas corpus. Presently before the en banc court are Respondents' motions for expedited consideration of this appeal and for temporary relief from the order of the district court pending appeal. The court has voted to grant Respondents' request for expedited consideration of this appeal and the matter has been calendared for oral argument before the en banc court on September 26, 1995. A majority of the court voted to deny Respondents' request for temporary relief pending appeal from the order of the district court granting the writ of habeas corpus.
 Judge WILKINS authored an opinion in which Chief Judge ERVIN and Judges HALL, MURNAGHAN, HAMILTON, WILLIAMS, MICHAEL, and MOTZ joined. Judge WILKINSON authored an opinion dissenting from denial of Respondents' request for temporary relief from the order of the district court pending appeal, in which Judges RUSSELL, WIDENER, NIEMEYER, and LUTTIG joined.
 WILKINS, Circuit Judge:
 
 
 1
 During the past three weeks since these parties first came before us, this matter has sharply divided this court as to its proper disposition. It is little wonder that it has engendered great concern among members of the majority and the dissent. For a federal court to enjoin an ongoing state criminal trial, let alone one involving multiple defendants on trial for crimes resulting in the death of the victim, is as momentous and undesirable an endeavor as a court can be called upon to undertake. Concerns of comity and federalism are at their apex. And, we are cognizant of the gravity of decisions that ultimately may result in the release of individuals who may be guilty of serious offenses.
 
 
 2
 Nevertheless, on July 20th, the en banc court granted a temporary stay of Petitioners' state criminal trial. Gilliam v. Foster, 61 F.3d 1070 (4th Cir.1995) (en banc). We concluded that Petitioners had counterbalanced the forceful comity and pragmatic concerns counseling against intervention with a colorable claim that the second trial violated their right not to be twice placed in jeopardy for the same offense. This conclusion, rendered on the record then before us, was based on Petitioners' strong showing that the declaration of a mistrial based on a motion by the State during their prior trial was not supported by manifest necessity. Thus, in the view of the majority, the temporary stay was the only means available to avoid the irretrievable loss of Petitioners' constitutional rights. We imposed a temporary stay until the district court ruled on the merits of Petitioners' claims, and we directed the district court to proceed as expeditiously as possible to rule on the merits.
 
 
 3
 The following day, the district court conducted a thorough evidentiary hearing. Subsequently, it entered a comprehensive and thoughtful decision concluding that the retrial of Petitioners was, indeed, barred by the Double Jeopardy Clause. Accordingly, it granted the writ of habeas corpus, thereby enjoining further prosecution.
 
 
 4
 The State has appealed from the order of the district court. In addition, the State has moved for expedited consideration of the appeal and relief from the district court order pending a decision of this court. The State submits that the jury empaneled to decide the second state criminal trial has not yet been released and apparently believes that if this court grants the relief it seeks, the prosecution may resume and the case be completed.
 
 
 5
 We have agreed to hear the State's appeal on an expedited basis and have scheduled oral argument before the en banc court for September 26, 1995. For the reasons set forth below, a majority of the court has determined that the State's motion for relief from the district court order pending appeal should be denied.[1]
 
 
 6
 In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court plainly declared that federal court interference with state criminal proceedings should not be undertaken except in the most narrow and extraordinary of circumstances. But, that prohibition is not absolute. Younger recognized that it may be appropriate for federal courts to enjoin state criminal proceedings when there has been a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54, 91 S.Ct. at 755 (emphasis added). It is undisputed that the state proceeding against Petitioners is not being undertaken in bad faith or for purposes of harassment. Moreover, there is no suggestion that the prosecutors who sought the mistrial on behalf of the State during the first trial or the judge who granted it were acting in bad faith in doing so.
 
 
 7
 Nevertheless, as Younger prudently recognized, these are not the only circumstances that may justify federal court intervention. The decisions of other courts unanimously recognize that a colorable Double Jeopardy Clause claim is a preeminent example of one of the very few "unusual circumstances" justifying federal court intervention in a state proceeding. See Mannes v. Gillespie, 967 F.2d 1310, 1312 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992); Showery v. Samaniego, 814 F.2d 200, 201 n. 5 (5th Cir.1987); Doe v. Donovan, 747 F.2d 42, 44 (1st Cir.1984) (per curiam); see also Willhauck v. Flanagan, 448 U.S. 1323, 1325, 101 S.Ct. 10, 11, 65 L.Ed.2d 1147 (Brennan, Circuit Justice 1980). Indeed, the justification for federal interference in state criminal proceedings is at least as compelling when the retrial itself irretrievably deprives the defendant of his constitutional double jeopardy rights as when the prosecution is undertaken in bad faith or to harass the defendant. Consequently, although federal court interference with ongoing state criminal proceedings should be undertaken in only the most limited, narrow, and circumscribed of situations, when the record clearly demonstrates a colorable showing that the trial will constitute a violation of the defendant's double jeopardy rights, federal court intervention is appropriate.
 
 
 8
 Here, based on the record then before us, this court initially determined that Petitioners had made a strong showing of a colorable double jeopardy claim for the reasons set forth in the previous order of this court which we incorporate herein by reference. Gilliam v. Foster, 61 F.3d 1070 (4th Cir.1995) (en banc). Those reasons are even more compelling at this juncture because the district court has now considered the matter on the merits, rendered a decision setting forth in detail the factual findings and conclusions of law supporting its decision, and ruled that Petitioners' double jeopardy rights will be violated by retrial.
 
 
 9
 In its request for relief from the order of the district court pending appeal, the State asserts that proper deference has not been accorded to the decision of the state trial judge to grant the mistrial, suggesting that the highly deferential standard that the Supreme Court established in Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), has been disregarded. Not so. As surely as Arizona v. Washington stands for the proposition that a high level of deference must be shown to the decision of the trial judge concerning the propriety of granting a mistrial, that decision stands for the proposition that this deference is not unlimited. Id. at 514, 98 S.Ct. at 834. Because a defendant possesses a constitutional right to have a particular tribunal decide his guilt or innocence once jeopardy has attached, manifest necessity must exist for the grant of a mistrial over the defendant's objection if he is to be subject to retrial. Id. at 505, 98 S.Ct. at 830. And, a reviewing court must be convinced that the trial judge exercised sound discretion in reaching its decision to grant the mistrial.[2] Id. at 514, 98 S.Ct. at 834. As the matter presently stands before this court, the district court concluded that given the nature of the photographs, the circumstances surrounding the jury's viewing of them, the availability of obvious and adequate alternatives to the mistrial,[3] and the record of the consideration undertaken by the state trial court in evaluating the propriety of the mistrial, the state trial judge did not exercise sound discretion in granting the mistrial and that manifest necessity did not exist. The State presently does not assert that the district court misstated the law of double jeopardy or that the factual findings of the district court are clearly erroneous, although it does note that contrary evidence was presented.[4]
 
 
 10
 Rather, the principal basis underlying the State's request that this court grant it relief is its contention that it will be irreparably harmed by a delay in completing Petitioners' second trial until this court has ruled. Of course, the State's argument is premised on the assumption that ultimately it will be permitted to resume the prosecution. If the second trial is not permitted, then no harm results from a temporary postponement. And, based on the showing the State has made thus far, its likelihood of final success on the merits is bleak. Further, the State offers nothing to support its claim that it will be irreparably harmed if this court does not grant temporary relief from the order of the district court, except the federalism concerns previously discussed. As noted above, this appeal has been scheduled for argument on September 26, 1995. The State does not assert that witnesses or evidence may become unavailable, that memories will fade, or that its prosecution of Petitioners would be jeopardized in any way by this delay. The only conceivable harm that the State might suffer is that the jury presently empaneled to decide Petitioners' guilt, while not yet tainted by outside influences and therefore able to resume the trial, may become tainted in the interim. However, there is no assurance that the state trial judge would permit the trial to resume if the State is granted the relief it seeks. The state trial judge apparently suggested that before the trial could be resumed an inquiry into whether the jury already had been tainted would be required. Further, the State points to no circumstance suggesting that any significant change will take place in the interim.
 
 
 11
 In sharp contrast, if Petitioners were prosecuted during the pendency of this appeal and it were later determined that the district court was correct in concluding that the trial violated their constitutional rights, Petitioners' loss is irreparable. Consequently, the balance of harms does not tip in favor of the State.
 
 
 12
 It cannot be doubted, as the dissenting members of the court emphasize, that our intervention in the state criminal proceeding has disrupted it. This is particularly regrettable since much of this disruption could have been avoided had the panel of this court or the district court simply and properly granted a temporary stay of the proceeding before the trial began. This matter was presented to the district court and to a panel of this court in advance of the first juror being selected, and ample opportunity existed for the imposition of a temporary injunction during the week preceding the scheduled second trial.
 
 
 13
 It is also regrettable that, because South Carolina law does not permit an interlocutory appeal of the double jeopardy ruling, the appellate courts of that state were not the ones to rule on this matter in the first instance. However, our consideration of Petitioners' claims shows no lack of respect for those courts. Indeed, the South Carolina appellate courts are well equipped to determine and correct any error, constitutional or otherwise, committed by its trial judges. The rub in this instance is that because of procedural rules the correction that could be afforded by those courts would come too late to safeguard the constitutional right at stake. See Abney v. United States, 431 U.S. 651, 660-62, 97 S.Ct. 2034, 2040-42, 52 L.Ed.2d 651 (1977) (Double Jeopardy Clause protects against multiple prosecutions as well as multiple convictions and punishments.).
 
 
 14
 Finally, it is unfortunate that a suggestion has been made that state trial judges must now sanction all types of errors rather than grant a mistrial. While there may be disagreement with our application of Arizona v. Washington, our decisions signal no retreat from the deferential standard the Supreme Court has established. And, the care with which state trial judges must act in granting a mistrial derives not from the intervention of the federal courts into the state criminal proceeding in this instance, but from the protection afforded by the Double Jeopardy Clause of the Constitution, as it has been interpreted by the Supreme Court, which requires manifest necessity to justify the declaration of a mistrial over a defendant's objection once jeopardy has attached; even if this court were not to intervene in this state criminal proceedings, any subsequent conviction obtained would nevertheless be subject to review for compliance with the Constitution.
 
 
 15
 Unquestionably, a federal court should exercise its authority to stay a state criminal proceeding in only the most limited circumstances. The grant of a writ of habeas corpus on the basis that the subsequent prosecution of Petitioners would violate their constitutional right not to be twice placed in jeopardy for the same offense is an exceptional circumstance that warrants the enjoining of state criminal proceedings by the district court. The only question presently before this court is whether the State is entitled to temporary relief from that order pending our full review. The State has failed to raise any serious question concerning the correctness of the ruling of the district court and has failed to show that it will suffer any irreparable harm by awaiting the en banc decision of this court. In contrast, Petitioners will likely suffer an irreparable loss of their constitutional rights if the court grants the State the relief it seeks. Accordingly, the balance of the hardships tips decidedly in favor of Petitioners. As a result, the court denies the motion of the State for relief pending appeal from the decision of the district court granting the writ of habeas corpus.
 
 
 16
 Chief Judge ERVIN, Judge HALL, Judge MURNAGHAN, Judge HAMILTON, Judge WILLIAMS, Judge MICHAEL, and Judge MOTZ join this opinion.
 
 WILKINSON, Circuit Judge, dissenting:
 
 17
 I dissent from the denial of the stay of the district court order granting the writ of habeas corpus. I would remand this case to the district court with immediate directions to dismiss the petition. The en banc court's interference with this ongoing state criminal trial must cease.
 
 
 18
 When this matter was previously before this court, five different judges issued five separate dissenting opinions stating their objections to staying the state criminal trial in this case. We viewed that stay as a step of unprecedented gravity and one that would severely impair the administration of criminal justice within this circuit. Now that the writ has been granted, I am reconfirmed in that assessment. I thought this sort of interference in the processes of state criminal justice had been forbidden since the time that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), limited Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), to instances where there had been some showing of prosecutorial bad faith.
 
 
 19
 Here there was no prosecutorial bad faith. The district court found "nothing in the record to indicate that the prosecutors acted with bad faith or improper motive in moving for a mistrial ..." Further, the district court credited under 28 U.S.C. Sec. 2254(d) the state court's finding that it was defense counsel that caused the photographs to be improperly placed before the state trial jury. These findings should have led to the dismissal of the petition and the resumption of the state court proceedings. Instead, the writ was granted, and the en banc court has denied the state's petition for a stay. Three defendants charged with the heinous offenses of murder and lynching thus will not face judgment of their peers. Moreover, defense counsel has secured the dismissal of a murder prosecution through counsel's own mistakes.
 
 
 20
 This action is an affront to federalism. It casts an undeserved vote of no confidence in state judiciaries (see dissenting opinion of Niemeyer, J.). When the costs in federal-state relations are added to the costs of the aborted criminal prosecutions, the sum is staggering. An itemized accounting shows the following:
 
 
 21
 A state trial judge has recused himself for no other reason than that this federal habeas petition was brought. Attorneys have argued repeatedly and often simultaneously before state and federal court about the relevance and the prejudicial effect of evidence in an ongoing state proceeding. An en banc court overturned a panel decision and stayed state proceedings without hearing argument and with far less than adequate opportunity to review the disputed photographs. A state jury was sent home and a state trial was indefinitely suspended by virtue of the federal ruling, and, of course, the federal district court entered orders first denying, and, then, granting the writ. The federal intervention came, thick and furious, on an issue that the state supreme court had dismissed as interlocutory. As a result of these proceedings, the state trial remains in abeyance, thus laying the ground for yet another mistrial, this one due to the actions of this court.
 
 
 22
 Even now, the confusion refuses to abate. On July 28, oral argument was set before the en banc court for September 26th, 1995. In the meantime, the state proceeding continues in limbo. The jury was sent home after presentation of the prosecution's case. What the jurors will read or learn about this case during the pendency of this court's proceedings is anybody's guess. Although the state trial judge properly instructed the jurors not to read about or discuss the case, any further decision of this court will be a minimum of two months in coming, and the jury has, understandably, not been sequestered for that period. The problems are worsening, not lessening. I do not envy the state court that tries to pick up the pieces after the federal judiciary has had its final say.
 
 
 23
 I say this not to point any finger of blame at my fine colleagues in the majority, but to underscore the serious difficulties that arise whenever federal judges attempt a midstream sortie into state criminal process. This action was not only ill advised; it is unprecedented. Our own precedent has found a violation of the double jeopardy provision in those instances where prosecutorial error contributed to the mistrial. See, e.g. United States v. Shafer, 987 F.2d 1054, 1059 (4th Cir.1993); Harris v. Young, 607 F.2d 1081, 1085 (4th Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). The earlier majority opinion fails to note a single federal case that we have dismissed on double jeopardy grounds where a mistrial resulted solely from defense counsel's error. Now, however, it enjoins an ongoing state trial on that basis, in the very context where principles of abstention are paramount. This is a step we have never taken. Astonishingly, we have adopted a rationale for interference in ongoing state criminal trials that is less stringent than the one undertaken for review of federal prosecutions. Although the majority justifies this in the name of protecting constitutional rights, I can only reply that our federal system is part of our constitution too.
 
 
 24
 I wish to emphasize that I find no fault with the district court, which has acquitted itself in the able and conscientious manner that this circuit has come to expect of it. The district judge at first refused to order a stay of the state criminal proceedings. Upon remand, however, the district court granted the writ. After reading this court's remand order, the district court had little choice but to reverse course. On no less than nine occasions the en banc court emphasized its own view of the merits of the underlying claim, contending that the state court acted "precipitously", "irresponsibly", "abused its discretion" and "ignored an obvious and completely adequate alternative" to remedy the error. Why the en banc court even bothered to remand the case for further proceedings is a mystery to me. Even as it did so this court showed its hand, declaring that: "The undisputed facts demonstrate that the state trial judge acted without any rational justification in granting the mistrial." It is small wonder, then, that the outcome of the hearing on remand produced a complete turnabout from the earlier result.
 
 
 25
 It is a dreadful outcome. Any decision aborting a state criminal trial would have adverse repercussions. But a decision of the en banc court cannot help but reverberate throughout the state courts of this circuit. State courts will now be required to tolerate errors in state criminal proceedings because the grant of a mistrial carries an unacceptable risk of federal interference.[1] Without the use of this corrective, state proceedings may become more prone to error and more subject to reversal during the lengthy direct and collateral proceedings that inevitably follow any state trial on a serious criminal offense. The entire purpose of the Supreme Court's decision in Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), was to have federal courts credit the judgments of state trial courts when they face the difficult discretionary decision of whether to grant a mistrial in a case. The Supreme Court warned that a trial judge's determination was entitled to the "highest degree of respect ..." Id. at 511, 98 S.Ct. at 833. It underscored that warning by stressing the deference owed to the state trial judge on at least five separate occasions. The en banc court has now ignored those warnings. Instead of deference, its decision has achieved something akin to a strict scrutiny effect.
 
 
 26
 The majority has paid lip service to the decisions in Younger v. Harris and Arizona v. Washington. The practical effect of its decision, however, undermines those two Supreme Court precedents. I am unable to discern from the majority opinion any principle limiting its willingness to intervene in state criminal process. "Manifest necessity" is to be in the eye of the beholder and the eye has become that of the federal judiciary, not that of the state trial judge. Moreover, the majority suggests that all of our present problems "could have been avoided had the panel of this court or the district court simply and properly granted a temporary stay of the [state] proceeding before the trial began." That statement misses the point. Absent extraordinary circumstances, assuredly not present here, state criminal trials are not to be placed in an on again, off again status by federal injunctions.
 
 
 27
 Here the state court granted a mistrial for the most legitimate of reasons. The trial court found that the disputed photographs had been improperly presented by defense counsel to the jury. It has now been argued on the one hand that the photographs are nothing more than cumulative and that they simply show the scene of the crime from different angles. It has been argued on the other hand that they were confusing to the jury on the critical issue of the location of the parties at the time of the shooting and that the red spots in the challenged photographs have never been determined to be human blood. This whole debate is beyond our ken. I cannot imagine that the federal judiciary has reconstituted itself as a super state trial court, and has involved itself in the minutiae of this garden variety evidentiary question.
 
 
 28
 More importantly, the trial judge sought to protect the integrity of the state's evidentiary admissions process. As I explained in my earlier dissent: "A trial judge was acting to protect nothing more than the integrity of evidentiary admissions. That process ensures a proper foundation is laid for the admission of evidence, and that the same is duly authenticated. It serves notice to all parties and participants in a trial of what is properly before the jury and what constitutes the record for appeal."
 
 
 29
 The state trial court found the admission of those photographs was both prejudicial and improper. Arizona requires that we support, not undermine, its decision. But the en banc court has not supported the state's attempt to safeguard its most basic rule of evidence. It has proceeded to undertake a remarkable exercise in hindsight marked by an indefatigable inclination to second guess. A jury of South Carolinians has not had, and may never have, a chance to decide the guilt or innocence of these defendants. This result may be a windfall for those accused of these heinous offenses, but it will not bring satisfaction to law abiding citizens of South Carolina, or of any other state.
 
 
 30
 Judge RUSSELL, Judge WIDENER, Judge NIEMEYER, and Judge LUTTIG join this dissent.
 
 
 
 [1]
 It is important not to lose sight of the question now presented to the court. We are asked only to decide whether the State should be granted temporary relief during the pendency of this appeal from the order of the district court granting the writ of habeas corpus. We are not called upon to offer a ruling on the merits of the appeal. However, the likelihood of success on the merits plays a part in the analysis of whether a temporary stay of the order of the district court is appropriate. See Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 813 (4th Cir.1991). So, some analysis of the comparative strength of the positions of the parties with respect to the merits is unavoidable
 
 
 [2]
 The state trial court never found the photographs to be inadmissible. The closest it came to doing so was to suggest that it could not speculate on whether the photographs would have been admitted. And, this must be viewed against the backdrop of the State having no objection to the admission of the photographs when the prosecuting attorney believed that they were being offered into evidence, the State's admission to this court in prior argument before the panel that the photographs were unobjectionable save perhaps that they were cumulative, and the later admission of the photographs, over the State's objection, during the second trial. In addition, the state trial judge made no finding of prejudice when the mistrial was granted. Later, in response to Petitioners' motion to dismiss, the state trial judge characterized the incident as prejudicial, but never offered any reason why the jury's viewing of the photographs might have prejudiced either party
 
 
 [3]
 The district court found that, assuming arguendo that the jury's viewing of the photographs was somehow prejudicial, the state trial judge declined to permit Officer Counts to be recalled so that the photographs could be offered into evidence, thereby improvidently ignoring a viable alternative offered by the defense that could have cured any prejudice
 
 
 [4]
 The State also emphasizes that it was defense counsel that was responsible for causing the unadmitted photographs to be placed before the jury. It is true that the state trial judge implicitly found that, perhaps through innocent mistake, defense counsel was responsible for permitting the jury to view the unadmitted photographs and that this finding is entitled to a presumption of correctness. See 28 U.S.C.A. Sec. 2254(d) (West 1994). Nevertheless, the fact that defense counsel may have been, or were, responsible for the error is not determinative of whether manifest necessity existed for the grant of the mistrial. In United States v. Jorn, 400 U.S. 470, 482-86, 91 S.Ct. 547, 555-58, 27 L.Ed.2d 543 (1971) (plurality), a plurality of the Supreme Court rejected the notion that it made a difference which party committed the error when the defendant opposes a mistrial. And, although this court has intimated that a defendant's right to a decision by an empaneled jury is particularly strong when the prosecution has caused the error, see United States v. Shafer, 987 F.2d 1054, 1057 & n. 4 (4th Cir.1993), this court has also held that a defendant's double jeopardy rights may be violated when defense counsel was solely responsible for the error, see United States v. Sloan, 36 F.3d 386 (4th Cir.1994). See also Harris v. Young, 607 F.2d 1081, 1085-86 (4th Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980)
 
 
 [1]
 The majority, moreover, has created a significant strategic opportunity for counsel in overturning the state trial court ruling in this case. Improper placement of evidence before the jury by defense counsel may now redound to its own benefit in one of two ways. If, as a result of the error, a mistrial is declared over the objections of the defense, the prospect of federal interference on double jeopardy grounds is distinct. If, on the other hand, a mistrial is not declared, the improper admission of evidence can still work to the benefit of the defense. Federal interference in state criminal trials is problematic under any circumstances; it is especially unfortunate when it creates a no lose proposition for one side in a state criminal case