(973 P.2d 208)

No. 77,135

STATE OF KANSAS, *Appellee,* v. CHRISTOBAL GONZALEZ, *Appellant.*

—

Opinion filed January 29, 1999.

*Janine Cox,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Terra D. Morehead,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before ROYSE, P.J., LEWIS, J., and THOMAS E. MALONE, District Judge, assigned.

MALONE, J.: Christobal Gonzalez was convicted of two counts of aggravated criminal sodomy and one count of rape. He raises numerous issues on appeal including whether the trial court violated the prohibition against double jeopardy when it allowed the State to retry him after a mistrial.

The facts will be reviewed in considerable detail. On October 29, 1993, an information was filed in Wyandotte District Court originally charging Christobal Gonzalez with two counts of sodomy and one count of rape. The information alleged that these crimes occurred between January 1, 1989, and January 1, 1990. The victim, Y.A., was either 4 or 5 years old at the time. The defendant's mother was the victim's babysitter. Y.A. did not accuse Gonzalez until June 1993. Gonzalez was either 14 or 15 years old when the alleged incidents took place, but he was 19 years old at the time the charges were filed. An order authorizing adult prosecution was secured by the State prior to filing the information.

Defense counsel filed numerous pretrial motions including motions for discovery and expert services. There were numerous trial continuances and at one point the defense counsel filed a motion to dismiss due to lack of a speedy trial. This motion was overruled.

The first trial commenced on March 13, 1995. The victim's mother was the first witness. On cross-examination, defense counsel challenged the mother's ability to recall dates. As the defense counsel pressed, the number of objections and sidebars steadily increased. Tension mounted until the following exchange took place between defense counsel and the witness:

"Q Now, did you talk to Mr. Stuart [prosecutor] after I made my opening statement yesterday?
"A Did I talk to him?
"Q In preparation for your testimony?
"A I don't know when we talked. I mean, he came out and got me if that's what you're asking. I had to talk to him.
"Q I'm not trying to insinuate anything bad about Mr. Stuart. It's perfectly legitimate for you to talk to Mr. Stuart any time you want. But what I'm trying to understand is why for the first time after my opening statement you decided that you had seen *Don't Touch My Daughter* one or two weeks prior to June 9th. When did that occur to you it might have been two weeks?
"A I just—I'm—I don't want to say it's a certain date because it's been so long and I don't remember.

"Q  Well, you had no problem giving the—giving Alford [a detective] a certain date, told him June 6th.

"A  I was just guessing then. I mean, I—I—I'm really telling you.

"Q  Understand me now, we're now down to the decision time. Don't guess. Okay. If you don't know, that's fine, that's your answer but you don't just guess, all right?

MR. STUART: Objection, Your Honor, I ask him to stop badgering the witness.

MR. DUNN: I will stop. This guessing is perplexing.

THE WITNESS: Isn't that the same as assuming? You want me to assume.

"Q  (By Mr. Dunn) Ma'am, when I want you to assume I'll tell you. When I want you to answer a straight question, I assume that you'll answer the straight question. I assume that you won't guess in criminal prosecution involving three B felonies.

MR. STUART: Objection, counsel. Now he's saying he wants her to guess sometimes. Now he doesn't want her to guess.

THE COURT: Assumption is not a guess.

MR. STUART: It's exactly the same.

MR. DUNN: How long have you been practicing?

MR. STUART: Do you have a problem with me? Judge, can we go back to chambers?

THE COURT: Gentlemen, we can keep it till lunch on personal matters. Let's continue the trial."

Cross-examination continued for about 30 minutes. At recess, the prosecutor moved for a mistrial. He told the court that he had seen a number of jurors laugh when the defense counsel made the remark, "How long have you been practicing?" He argued the remark had cost him all credibility with the jury. The court refused to grant a mistrial at first, but then decided to consider the matter over lunch.

After lunch, the court entertained extensive argument and again denied the request for a mistrial. At this point, the prosecutor refused to continue the trial:

"MR. STUART: Judge, I'm sorry, I don't mean to be disrespectful but I cannot continue this trial having seen those jurors react the way they did. I have no shot at a fair trial at all. My credibility is absolutely gone. I don't mean to be disrespectful but I cannot continue."

After the court said it would be in the best interests to go ahead, the prosecutor continued to vehemently argue with the court:

"MR. STUART: I'm sorry, judge, I can't. I will not. And if you need to put me in jail or find me in contempt, you have to do that I'm sure but I will not continue with my credibility having been attacked like that. The victim has no shot at a fair trial now. It's a fair trial when you attack the evidence. I'm not the evidence. I brought down not only the judicial canons but also the ethical rules of responsibility. I can find three or four that appear to be violated."

After the prosecutor talked about what he deemed as ethics violations, the court noted that the issue was whether the jury had been so contaminated as to not be able to render a fair trial. The court also noted that jeopardy had attached. The court then told the prosecutor if he did not continue it would be considered a voluntary dismissal. The prosecutor said it would not be a voluntary dismissal.

The court then offered to allow the prosecutor to get another attorney to either second chair or take over. The prosecutor refused:

"MR. STUART: Judge, I don't mean any disrespect but you have been consistently siding with the defense on this on all of the issues and particularly now that I personally have been attacked you won't grant me a mistrial when it causes absolutely no burden to the defendant other than we reached our mistrial. It's a lawyer paid for by the state. He's already waived his speedy trial. There's no burden on anything except for the fact that I have got to get my witnesses in and retry this case. The only—that's the only downside to us starting over. The downside to us continuing to go, judge, is that I cannot win now. Absolutely positively cannot win."

After some additional discussion, the court expressed a feeling that it had a responsibility to provide a setting in which an attorney feels comfortable practicing law. The trial judge finally stated, "I guess I'll declare the mistrial." Defense counsel objected and clearly stated he was not agreeing to a mistrial.

Prior to the second trial, the defense counsel filed a motion to dismiss on double jeopardy grounds. At the hearing, the defense counsel argued that the prosecutor's refusal to proceed was not manifest necessity and did not require a second trial. The defense counsel noted that the prosecutor did not request any less drastic means such as questioning the jury for bias or admonishing and instructing the jury to disregard counsel's comments. The State

argued that there was manifest necessity to grant the mistrial and that double jeopardy was not implicated.

The trial judge denied the motion, finding among other things that "I can't personally force an attorney to go to trial." The trial judge concluded, "I think attorneys can expect that they will be treated ethically in trial and if they feel like they've lost all credibility with the jury, I can't argue with the fact that a mistrial is appropriate. I think at that point it should be the attorney's call."

The defendant's second trial commenced before a different trial judge on January 12, 1996. The jury found the defendant guilty of two counts of aggravated criminal sodomy and one count of rape. The defendant was sentenced to three concurrent terms of not less than 8 or more than 20 years' imprisonment. This appeal follows.

The first issue we must decide is whether the defendant's second trial violated his constitutional protection against double jeopardy. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Such double jeopardy protection is applicable to the states through the Fourteenth Amendment to the United States Constitution. Similar protection against double jeopardy is also provided in the Kansas Constitution Bill of Rights, § 10.

Protection against double jeopardy is also embodied in Kansas statutory law. K.S.A. 21-3108 provides in part:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of: . . . (iii) the impossibility of the jury arriving at a verdict. A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or when the case is tried to the court without a jury, when the court has begun to hear evidence."

K.S.A. 22-3423 sets forth the grounds for granting a mistrial. The statute provides in part:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

. . . .

(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."

Case law has developed a "manifest necessity" exception to the prohibition against double jeopardy as recognized in *Arizona v. Washington*, 434 U.S. 497, 505, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978):

"Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant."

The Kansas Supreme Court recognizes the doctrine of manifest necessity. In *State v. Bates*, 226 Kan. 277, 283, 597 P.2d 646 (1979), the court stated:

"Even when a mistrial is declared without the consent of the defendant or upon his motion, a retrial is still constitutionally permissible *if* the judge exercised sound discretion in determining justice required a mistrial. [Citation omitted.] The test to be applied in assessing the judge's discretion in declaring a mistrial and discharging the jury from giving a verdict is whether there is a *manifest necessity* for the act, or the *ends of public justice would otherwise be defeated*. [Citation omitted.]"

The court reasoned in *Bates* that the existence of manifest necessity depends upon a balancing of the interests between the defendant's "right not to be placed in double jeopardy versus the public interest in seeking a final determination through a second trial." 226 Kan. at 284. Furthermore, the court noted that the prosecution has the burden to prove that manifest necessity justifies a

mistrial which is declared without the defendant's consent. 226 Kan. at 286.

In *State v. Burnett*, 13 Kan. App. 2d 60, 63, 762 P.2d 192, *rev. denied* 244 Kan. 739 (1988), this court noted that where a mistrial is ordered because of improper remarks made by defense counsel, the trial judge's determination is entitled to special respect. The court stated that the trial judge may find that manifest necessity to declare a mistrial exists where improper comments of defense counsel may bias the jury. The judge must weigh the defendant's right to have a trial concluded before the first jury with the public's interest in a fair trial and judgment. 13 Kan. App. 2d at 64.

The key issue for our determination is whether the trial court properly exercised its discretion in granting the mistrial. Although no statutory basis for the mistrial was given at the time it was granted, both parties cite K.S.A. 22-3423(1)(c) as the basis for the mistrial. This statute provides that a trial judge may order a mistrial at any time termination is necessary because of prejudicial conduct which makes it impossible to proceed without injustice to either of the parties.

Here, the only basis for granting the mistrial was the defense counsel's offending question "How long have you been practicing?" which was made to the prosecutor in front of the jury. Although we agree that this statement was improper, it is not the type of behavior which would normally necessitate a mistrial. Furthermore, the defense counsel's remark pales in comparison to the belligerent conduct exhibited by the prosecutor. The trial judge was clearly reluctant to grant a mistrial and indicated on at least three separate occasions that the motion for mistrial was denied. Rather than accept this ruling, the prosecutor persisted and indicated that he simply refused to continue the trial.

After considerable discussion, the trial court relented and granted the mistrial over the defendant's strenuous objection. The trial court expressed a feeling that it had a responsibility to provide a setting in which an attorney feels comfortable practicing law. At the subsequent motion to dismiss, the trial court stated that it could not personally force an attorney to go to trial. The trial judge con-

cluded that whether to grant a mistrial under the circumstances of this case was "the attorney's call."

It is the trial judge's responsibility to maintain control over court proceedings. Obviously the trial judge in this case had the authority to force the prosecutor to continue the trial. Instead, the trial court ultimately abdicated this authority to the prosecuting attorney. It appears that the trial judge initially balanced the defendant's right not to be placed in double jeopardy against the public interest in seeking a second trial. However, the trial court abandoned this test when it capitulated to the demands of the prosecutor.

A mistrial was unnecessary to afford the State a fair trial under the circumstances of this case. The trial judge could have employed less drastic options which would have been more appropriate. We do not know if any jurors became biased as a result of the improper statement because no inquiry was ever made. More than likely, an instruction to the jury to disregard counsel's comments would have been sufficient in this instance to assure that both parties continued to receive a fair trial. Forcing the prosecutor to proceed under such circumstances clearly would not have defeated the ends of public justice.

We recognize that the incident in this case was precipitated by an improper remark of the defense attorney. However, the real problem was how the trial court allowed the situation to escalate at the demands of the prosecutor. The State has a heavy burden to demonstrate manifest necessity for any mistrial declared over the defendant's objection. We are convinced from the record that the State failed to meet this burden and that the ruling granting a mistrial amounted to an abuse of the trial court's discretion.

Since we do not believe that the trial court exercised sound discretion in determining that justice required a mistrial, we are unable to find the existence of manifest necessity to allow a second trial of the defendant. In this case the prosecution was entitled to one full and fair opportunity to bring Gonzalez to trial. This opportunity was provided at the first trial. The defendant had an interest in having the original jury decide his fate. Accordingly, we conclude that the second trial violated the defendant's protection against double jeopardy guaranteed by the federal and state con-

stitutions and also Kansas statutes. Therefore, the trial court erred in overruling the defendant's motion to dismiss based upon double jeopardy.

We recognize that the defendant has raised significant issues on appeal concerning errors allegedly committed by the court in the second trial. However, the double jeopardy issue is dispositive and therefore we do not need to address any other issues raised in this appeal.

Reversed and remanded with directions to discharge the defendant.