(29 P.3d 462)
No. 86,928

In the Matter of the Petition of JACKIE P. MINNIS, JR., for a Writ of Habeas Corpus.

Opinion filed August 10, 2001.

*Bradley P. Sylvester*, of Wichita, for the appellant.

*Lesley A. McFadden*, assistant district attorney, for the appellee.

Before PIERRON, P.J., GERNON and KNUDSON, JJ.

PIERRON, J: Jackie P. Minnis, Jr., has filed an original action seeking a writ of habeas corpus. He seeks to prevent a second trial, following a mistrial on one count of possession of cocaine. He alleges a second trial would violate his statutory and constitutional protections against double jeopardy. By order of this court, the second jury trial has been stayed pending determination of the petition.

A writ of habeas corpus is appropriate for relief from double jeopardy. See *In re Habeas Corpus Petition of Hoang*, 245 Kan.

560, 781 P.2d 731 (1989); *In re Habeas Corpus Petition of Mason*, 245 Kan. 111, 775 P.2d 179 (1989); *In re Berkowitz*, 3 Kan. App. 2d 726, 602 P.2d 99 (1979). The parties have filed supplemental pleadings and a copy of the trial transcript and pretrial motion transcript pursuant to Supreme Court Rule 9.01(b) (2000 Kan. Ct. R. Annot. 61). Pursuant to Supreme Court Rule 9.01(e) (2000 Kan. Ct. R. Annot. 62), this court finds the petition, responses, and record clearly indicate what the appropriate disposition should be and that no further hearings or briefing are necessary.

On February 5, 2001, Minnis went to trial on one count of possession of cocaine. During voir dire, counsel for Minnis made the following statement to the prospective jurors:

"The State is talking about Perry Mason, and somebody crying saying, I did it, I'm going to confess to it. Mr. Minnis, you may hear in this case, has a very low IQ and he may cry during the trial is the way he responds to things. Does any— referring to the box, anybody have a close relative or family member that has a lower IQ that you've had to deal with or work with in some way? No one. I see no response."

Counsel then asked questions of individual jurors relating to their experience with people with lower IQ's. For example, he asked a juror who is a teacher whether she would feel sorry for Minnis if she thought he had a very low IQ. When she said she might, he asked whether that would influence her determination of guilt, and she replied it would not. Counsel asked another juror whether mental retardation was a factor that he might consider when evaluating the evidence in a case, and the juror answered he would consider such a factor. Counsel asked another juror whether the juror's previous experience with a mentally deficient person would influence his interpretation of the evidence, and the juror said it would not. Counsel asked whether any members of the pool believed that mentally deficient people should be isolated from society. Counsel also asked whether jurors would assume that Minnis was "just faking it" if he started to cry during the trial. The State raised no objection to any of these statements and questions by defense counsel.

Following strikes, 12 jurors were sworn in The State subsequently objected to defense counsel's questions relating to Minnis'

mental capacity. The State requested a mistrial, and Minnis objected. The trial court granted the motion for mistrial and excused the jury. On March 23, 2001, a hearing was conducted before a different judge on Minnis' motion to dismiss due to double jeopardy. The motion was denied. Minnis thereupon filed his petition with this court. On April 6, 2001, a hearing was held on the State's motion to bar any evidence relating to mental defect, which was granted.

The Fifth Amendment to the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and K.S.A. 21-3108(1) prohibit placing a defendant in jeopardy twice for the same offense. When trial is by jury, jeopardy attaches when the jury has been impaneled and sworn. K.S.A. 21-3108(1)(c); *Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978). Whether a retrial is barred due to double jeopardy is a question of law subject to de novo review. *Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir. 1996).

A retrial is constitutionally permissible if the judge exercised sound discretion in determining justice required a mistrial. *State v. Johnson*, 261 Kan. 496, 500, 932 P.2d 380 (1997). In assessing the judge's exercise of discretion, an appellate court determines whether there was a "manifest necessity" for a mistrial or whether the ends of public justice would otherwise be defeated. 261 Kan. at 500. Deference to judicial discretion does not undermine the necessity of showing manifest necessity. *Gilliam v. Foster*, 63 F.3d 287, 290 (4th Cir. 1995). An appellate court must examine the record and determine whether a new trial was justified. *U.S. v. Meza-Soria*, 935 F.2d 166, 171 (9th Cir. 1991).

Although little case law exists examining manifest necessity for a mistrial in the context of voir dire, courts have considered the question in the context of opening statements. In *State v. Gonzalez*, 25 Kan. App. 2d 862, 973 P.2d 208 (1999), defense counsel made a comment about the prosecutor's competence that provoked laughter from the jury and led the trial court to grant a mistrial. Our court noted that curative instructions could have salvaged the trial and held the trial court had abused its discretion. 25 Kan. App. 2d at 868-69.

Opening statements by the State have often been held either harmless or curable through instruction. It has been held *not* unduly prejudicial for the prosecution to anticipate the defense's testimony during opening statements. *State v. Duncan*, 25 Kan. App. 2d 41, 42-44, 956 P.2d 737 (1998). When the prosecution announces in opening statements that a certain witness will testify about highly incriminating evidence and this evidence is later excluded, no manifest injustice occurs requiring mistrial. *State v. Ruebke*, 240 Kan. 493, 503, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987); see also *Wilkerson v. State*, 874 S.W.2d 127, 131 (Tex. App. 1994) (preliminary statement of what State expects to prove is proper, even if State does not introduce any supporting evidence); *Travieso v. State*, 480 So. 2d 100, 103 (Fla. App. 1985) (preliminary statement by State indicating witness' testimony proper even if witness later is not called).

In the present case, Minnis offered no evidence at all to the jury. The State could assume at the beginning of voir dire that no mental capacity defense would be raised because Minnis had not filed notice of the defense as required by K.S.A. 22-3219. The State nevertheless raised no objection to the voir dire questions relating to Minnis' mental capacity. In its responsive pleading, the State asserts it attempted to object to the questions during peremptory strikes. The record shows the State first raised the issue after the jury was sworn in, at which time jeopardy had already attached. The failure to object to the jury selection process until after the jury has been selected waives any claim regarding specific questions or statements to the jury. *State v. Wood*, 235 Kan. 915, 919, 686 P.2d 128 (1984).

In any event, it is not clear that Minnis' questions were inappropriate. Two prospective jurors had informed the court they worked with mentally disabled individuals on a regular basis. The questions and statements about Minnis' mental capacity did not suggest to the jury that Minnis was innocent by virtue of his IQ. The dialogue between counsel and prospective jurors instead focused on the jurors' ability to judge Minnis fairly and not to be influenced by his possible courtroom behavior and lower intelligence. The State

failed to test the intent of the questions by means of a contemporaneous objection.

Even if the voir dire was improper, our courts assume it is within a jury's capacity to follow cautionary instructions and to assess a defendant's guilt or innocence solely on the basis of the evidence. *State v. Akins*, 261 Kan. 346, 363, 932 P.2d 408 (1997). A curative instruction that opening statements are not evidence can remedy counsel's comments when no evidence is presented to support those remarks. See *State v. Davidson*, 264 Kan. 44, 54-55, 954 P.2d 702 (1998); *People v. Smith*, 590 N.Y.S.2d 622, 187 App. Div. 2d 942 (1992). It is unlikely the jury would have confused counsel's questions at voir dire with exculpatory evidence when no evidence was offered.

A mistrial is to be granted only in extraordinary and striking circumstances, and the prosecutor bears a heavy burden in justifying a mistrial to avoid the double jeopardy bar on retrial. *Gonzalez*, 25 Kan. App. 2d at 867; *U.S. v. Sloan*, 36 F.3d 386, 394 (4th Cir. 1994). The defendant need not demonstrate actual prejudice resulting from the mistrial other than the infringement on the right to have a tribunal decide the cause. 36 F.3d at 395. The fact that defense counsel may have been responsible for the error does not determine whether manifest necessity existed for granting a mistrial. *Gilliam*, 63 F.3d at 291.

No manifest necessity existed requiring a mistrial. The State failed to object during the course of the voir dire, and jury instructions could have cured any improper implications resulting from the questions. Minnis was opposed to declaring a mistrial and stated his willingness to limit the defense in conformity with K.S.A. 22-3219. Jeopardy had already attached, and requiring Minnis to undergo a second trial would violate statutory and constitutional mandates. The writ is granted. The case is remanded to the trial court with directions to dismiss the complaint pending against Minnis.

Reversed and remanded with directions to dismiss the complaint.