(217 P.3d 986)
No. 95,798 ■

STATE OF KANSAS, *Appellee,* v. MICHAEL EDWARD FIELDEN,
*Appellant.*

Opinion filed February 23, 2007.

*Randy R. McCalla*, of Law Offices of Randy R. McCalla, P.A., of Olathe, for appellant.

*Amanda Voth*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Michael Edward Fielden appeals jury convictions on two counts of violation of a protection from abuse order.

Jennifer Copeland is the ex-wife of Fielden. On May 21, 2003, a protection from abuse order was issued for Copeland against Fielden. Because Fielden was violent, Copeland asked the court to order him to stay away from her and their 5-year-old son.

Robert Stephenson, a chief investigator to the Intelligence and Investigations Unit at Norton Correctional Facility (NCF), served the order on Fielden personally in a segregation unit on October 24, 2003. Fielden denied receiving or signing the order at NCF.

Earlier in 2003, Copeland had reported that Fielden had been contacting her in violation of the protective order, and Stephenson drafted a document titled "Order of Cease Contact of Correspondence" and served it on Fielden on September 5, 2003. This document was State's Exhibit No. 4, which is not in the record on appeal.

On December 12, 2003, Copeland received a phone call at home from Fielden, who was in the Lansing Correctional Facility (LCF). Copeland reported the phone call to police, and Alicia Duncan, a community service officer, confirmed the existence of the protective order and its service on Fielden on October 24, 2003, while incarcerated at NCF. Fielden claimed that when he called Cope-

land he did not know about the protective order in effect. This incident is the basis for the charge filed in Case No. 04DV123 of one count of violation of a protective order for making a phone call to Copeland.

On July 30, 2004, Deputy Anthony Bartkoski of the Johnson County Sheriff's Office served Fielden with another protective order at the courthouse.

On September 11, 2004, Copeland was in the front yard of her home with her son, her sister, a friend, and their children. They saw a suspicious van pass the house several times. Copeland realized the driver was Fielden. He drove the van to the end of the street, parked at a nearby apartment complex, and watched Copeland and the others for a few minutes. He then drove back by Copeland's house, honked a few times, and waved his hands at them.

Copeland called the police, and Officer John Douglass arrested Fielden at his home. Fielden claimed he had inadvertently driven by Copeland's house while returning home from his best friend's house who lived near Copeland. Fielden stated he had parked at his friend's apartment complex, honked the horn but nobody came to the door, so he decided to go home. Fielden admitted he was afraid for Copeland to see him but denied making any gestures toward her. According to Fielden, he drove slowly because of heavy traffic, a train crossing, and a bad dip in on the street. This is the factual basis of Case No. 04DV1258, which charged Fielden with two counts of violation of a protective order for his actions on September 11, 2004.

On September 13, 2004, Copeland appeared in court, stating she wanted no contact from Fielden. Within 20 minutes after returning home, Copeland received a collect phone call at 4:13 p.m. from Fielden, who stated he just had one last thing he wanted to say to her; Copeland hung up. Copeland reported the call to police. Officer Eric Hardman checked her caller ID and went to the county jail to speak with Fielden.

Officer Hardman found that Fielden had been out of his cell making a phone call at the time Copeland received a call from him. Hardman explained to Fielden there was a protection from abuse

order against him and he was prohibited from contacting Cope-
land. Fielden became extremely upset, screaming and cursing at
Hardman. Fielden said, " 'Fuck Olathe, fuck you and fuck anybody
involved. What the fuck are you going to do with me? Put me in
jail? What are you going to do, give me another $100,000 bond?' "
When Hardman decided to leave, Fielden came up a foot away
from him, yelling and cursing. Deputies came into the room and
took Fielden to his cell.

Officer Hardman learned that Copeland reported two more
phone calls from Fielden at 5:46 p.m. and 5:48 p.m. from the
county jail. Fielden was charged with three counts of protective
order violation for his phone calls to Copeland made on September
13, 2004, in Case No. 04DV1267.

The State filed a motion to consolidate the cases, stating the
victim was the same, the underlying protection from abuse order
was the same, and the cases occurred in close sequence of time.
The trial court granted the consolidation. Fielden filed a motion
to consolidate two counts in Case No. 04DV1258 and three counts
in Case No. 04DV1267 because those counts merged and should
be considered as single acts.

Fielden's defense at trial was that he did not have notice of the
protective order when he made the telephone call to Copeland on
December 12, 2003. He alleged that Copeland had overreacted to
his actions on September 11, 2004, and driving on the public street
was not a prohibited contact. Fielden also claimed the State had
failed to show that he was the caller on September 13, 2004.

The trial court dismissed the second count in Case No.
04DV1258 and two counts in Case No. 04DV1267, so that the jury
was to consider one count each in three cases. The jury found
Fielden not guilty in Case No. 04DV123 and guilty in Case Nos.
04DV1258 and 04DV1267. Fielden was sentenced to two consec-
utive jail terms of 12 months for each conviction.

Fielden first argues his due process rights were violated when
the trial court joined the three cases for a single jury trial.

Whether a defendant will be tried on separate charges in a single
trial is a matter within the discretion of the trial court and will not
be disturbed absent an abuse of that discretion. If reasonable per-

sons could differ about the propriety of the trial court's decision, the appellate court will not find an abuse of discretion. If the multiple charges are based on two or more transactions connected together or constituting parts of a common scheme or plan, joinder is proper under K.S.A. 22-3202(1). *State v. Anthony*, 257 Kan. 1003, 1016, 898 P.2d 1109 (1995).

Fielden does not argue that his cases were joined in violation of the requirements in K.S.A. 22-3202 or K.S.A. 22-3203, nor does he claim that inadmissible evidence was introduced in violation of K.S.A. 60-455. Instead, he argues that even in compliance with the statutory requirements, the trial court violated his due process rights in presenting the jury "with an extensive reminder that [Fielden] had served time in a State penitentiary."

Fielden points out that five of the State's first six witnesses were employed by either NCF or LCF, giving a strong impression that Fielden had been incarcerated. Under these circumstances, Fielden argues "the jury was as likely to infer that because [Fielden's] prior criminal history was serious enough to land him in a State penal institution, his propensity for engaging in criminal conduct must have been sufficient to cause him to commit the offenses alleged in 04DV1258 and 04DV1267 regardless of the sufficiency of the evidence in 04DV123." Fielden relies on *Bean v. Calderon*, 163 F.3d 1073 (9th Cir. 1998), for the proposition that his right to a fair trial was violated by the joining of three cases into a single trial.

Bean had been convicted of two counts of first-degree murder, robbery, and burglary as to two separate victims, Schatz and Fox. After Bean's convictions were affirmed by the California Supreme Court, he filed a habeas corpus action in federal court. The *Bean* court noted that the Fox case was relatively weak compared to the evidence in the Schatz case, and the joinder of the weak case with the strong case permitted the jury to infer criminal propensity. 163 F.3d at 1083.

The *Bean* court concluded that Bean's right to a fair trial was violated because of the risk of undue prejudice which occurs in joinder when evidence of other crimes is introduced. 163 F.3d at 1085. However, Fielden argues that this is not the issue that he

raises. In *Bean*, the real danger of criminal propensity was shown because the jury might have concluded that Bean was guilty of the weaker case due to a propensity to murder evidenced in the stronger case. On the other hand, Fielden's argument of criminal propensity is not shown in the fact that he committed two stronger cases but the fact that the evidence was introduced that he was incarcerated when he allegedly committed the crime in the weaker case.

The jury was instructed to consider each charge separately on the evidence and law applicable to it, uninfluenced by its decision as to any other charge. Our courts assume it is within a jury's capacity to follow instructions and assess a defendant's guilt or innocence solely on the evidence. *In re Habeas Corpus Petition of Minnis*, 29 Kan. App. 2d 644, 648, 29 P.3d 462 (2001), *rev. denied* 272 Kan. 1035 (2002). In fact, the jury found Fielden not guilty of the charge in Case No. 04DV123. Unlike *Bean*, this is a case "where acquittal on one joined charge establishes that the jury successfully compartmentalized the evidence." 163 F.3d at 1085.

Fielden argues the evidence that he was an ex-convict, combined with the fact that his main witness was incarcerated at the time of the trial was prejudicial. It was the defense's decision to call the witnesses, and in direct examination, the witness who was wearing prison attire stated his incarceration had nothing to do with this case. Fielden also argues that an additional factor of the prosecutor's inflammatory statements regarding Fielden's outburst against Officer Hardman deprived him of his right to a fair trial. This argument is discussed more thoroughly in the next issue. Under these circumstances, there was no violation of Fielden's constitutional right to a fair trial in joining three cases into a single trial.

Fielden next argues that the prosecutor's improper statements made during opening and closing arguments prejudiced him, denying him his right to a fair trial.

Reversible error based on prosecutorial misconduct must show the alleged error denied the defendant his or her right to a fair trial under the Fourteenth Amendment. *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003). Although a contemporaneous objection is generally required to preserve for appeal an issue of

improper statements made in closing argument, a trial court has a duty to protect the defendant's right to a fair trial by preventing the occurrence of prosecutorial misconduct regardless of whether timely objection was made. See *State v. Holmes,* 272 Kan. 491, 498, 33 P.3d 856 (2001).

A two-step process is used to analyze allegations of prosecutorial misconduct. First, we must answer whether the comments were outside the wide latitude for language and manner that a prosecutor is allowed when discussing the evidence. The second step requires the court to decide whether the prosecutor's remarks constitute plain error, *i.e.,* whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny the defendant a fair trial, requiring reversal. *Davis,* 275 Kan. at 121. Factors to consider under the second step are whether the comments show ill will by the prosecutor, whether the evidence against the defendant was so overwhelming that the prosecutor's misconduct had little or no likelihood to have changed the result of the trial, and whether the trial court sanctioned the comment. *State v. Scott,* 271 Kan. 103, 115, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001).

First, Fielden complains the prosecutor began her opening statement by describing the incident of Fielden's conversation with Officer Hardman and gave an impression to the jury that he was "belligerent and potentially dangerous." Fielden complains the prosecutor's mentioning and repeating of his conversation with Hardman during the opening statement was prejudicial.

The opening statement is given for the purposes of assisting the jury in understanding what each side expects its evidence at trial will prove and to advise the jury what questions will be presented for its decision. The tendency is to permit a prosecutor reasonable latitude in stating to the jury the facts he or she proposes to prove. *State v. McCorkendale,* 267 Kan. 263, 277, 979 P.2d 1239 (1999).

Fielden complains that the evidence of his actions and words to Officer Hardman were so obviously prejudicial that any probative value was simply outweighed by the potential prejudice. The record does not show that Fielden objected to the admission of this evidence when Hardman testified at trial. The only objection was

to the introduction of the tape recording of the conversation, which was granted. The admission of the evidence in question is not properly before this court. See *State v. Torres*, 280 Kan. 309, 319, 121 P.3d 429 (2005) (timely and specific objection for the admission of evidence is necessary to preserve the issue for appeal).

Second, Fielden complains the following statements in closing argument were improper and prejudicial because they appealed to the emotions and sympathies of the jurors:

"It's a strict violation and the reason is because [Fielden] hurts [Copeland], he has hurt her before and because of that conduct, the court, over and over again, said not even to be around her."

"And the peace that Jennifer Copeland and [her son] are entitled to will only come with you guilty verdicts, three of them. He did it three times. Tell Jennifer Copeland it's all right. And the law will require him to do what he doesn't have the courage to do himself which is to give her and allow her to have a life."

Fielden complains that the above-quoted statements appealed to the emotions and sympathies of the jurors and mischaracterized the evidence. It is true that there was no evidence presented that Fielden was physically violent to Copeland, and the prosecutor did not argue that he was. The only incident which the prosecutor mentioned during the opening and closing arguments which gave an impression that Fielden might be a violent and dangerous man was the confrontation with Officer Hardman. As discussed previously, it was not improper to discuss the evidence of the case during the arguments.

The charge of violation of protection from abuse order did not require Fielden to have an intent to harass, threaten, or harm Copeland; rather, the State must prove Fielden knowingly or intentionally violated the protective order. The prosecutor's comments explain why Copeland was under the protective order applicable to Fielden. The prosecutor's arguments may be categorized as appealing to the jury's emotion; however, they were still within the wide latitude allowed in the closing argument.

When viewed in light of the record as a whole, these comments were not so gross and flagrant as to prejudice the jury against Fielden and deny him a fair trial. See *McCorkendale*, 267 Kan. at 279.

The trial court dismissed the multiple counts from the cases, and the jury acquitted him of one of the three charges.

These alleged instances of misconduct were not misconduct at all but rather permissible argument or admissible evidence based on the facts of this case. There was no evidence of ill will by the prosecutor or a concerted effort to deny Fielden a fair trial. Fielden was not denied of his right to a fair trial.

Affirmed.